Good morning, and may it please the Court. My name is Brenton Gregg, and I represent the appellant in this matter, the CO2 Committee Incorporated. The CO2 Committee's members are small share working interest owners within the McElmo Dome Unit. They brought their case to vindicate their constitutional rights when taxes were imposed on them without notice and the opportunity to be heard. Unlike a host of other tax challengers that have come before this Court, the CO2 Committee had actually done its legwork. It sought a remedy in state court first, only to be told that it did not have a standing to seek a remedy in state court. So it brought its claims in district court because there was no remedy to be had within the state courts. The district court dismissed the Committee's complaint under Federal Rules Civil Procedure 12B1 and 28 U.S.C. Section 1341, the Tax Injunction Act, or the TIA. It found that it had no subject matter jurisdiction under the TIA, but it never made an express finding that there was a plain, speedy, and efficient remedy available to the Committee within the courts of Colorado. Instead, it assumed that because the Committee had been able to file a complaint within Colorado's state courts, that a remedy must be available. This was wrong, and the district court erred for three reasons. First, the Court found that the Committee had failed to allege the impossibility of a plain, speedy, and efficient remedy. But the Committee had both alleged it in its complaint and it had shown it with case law from Colorado's highest court. Could the Committee have forced Kinder to bring its claims? Well, as an initial matter, Kinder Morgan's litigation happened years prior, and the Committee wasn't aware of it at the time. That seems hard to believe, that sophisticated business people, working interests, this all happens with that kind of money, and not a whisper is heard, but that's the position. And yes, that is the position, but more importantly for our purposes here today, on a motion to dismiss under 12B1 and a facial attack, the Court was required to construe the Committee's allegations as true. Well, even now, even now, and I understand Kinder had its own track, and CO2 has its own track of litigation, but even now, could the Committee, is the Committee owed a fiduciary duty by Kinder Morgan to protect its interests, since it's the unit operator? And if so, why would that not be a plain, speedy, and efficient remedy in state court? So that will bring us to my second point, but let me address your question directly first. In order for this to be a plain, speedy, and efficient remedy, it has to be efficient, which in Roswell v. LaSalle, the Supreme Court says it can't require a bunch of ineffectual activity. Here, the Committee wasn't aware that taxes were going to be, or an audit, and then additional taxes were going to be imposed upon it. And then requiring Kinder Morgan to sue on the Committee's behalf, this was not something Kinder Morgan had agreed to do, and so that might have required another lawsuit as well. Does it come with the territory? Obviously, the Colorado Supreme Court thought that a unit operator framework had significance. If you're the one with standing, the rest of them aren't taxpayers. Why isn't it the same thing here? In other words, there is a plain, speedy, and efficient remedy, because just go tell Kinder Morgan to bring the claim. It has standing. It owes you. Can you say that there's not a fiduciary duty? Not anymore. And that gets us to the chronology. So when Kinder Morgan's litigation happened and finally finished in 2017, the Colorado Supreme Court had not yet said that only Kinder Morgan could bring those claims. Instead, the statutes referred to a taxpayer, and the Committee thought, well, we're a taxpayer. We can bring claims on our own behalf. It was only after Kinder, in the complaint also, the Committee points out that when Kinder Morgan first gave the Committee notice, it encouraged the Committee to bring claims on its own behalf, because it wasn't a related party vis-a-vis the Cortez pipeline that was at issue in the Kinder Morgan litigation. So I believe that answered your question. Well, would it, I guess, following on, would it make sense for us to remand the District Court to find out whether or not Kinder does owe a fiduciary duty, and if so, to then declare you have a plain, speedy, and efficient remedy? At this point, in the Colorado Supreme Court, in CO2's litigation that completed in 2023, didn't touch the question of, it didn't exactly rule that Kinder Morgan was a fiduciary. It just said that it was the lone person withstanding. But this happened after Kinder Morgan's litigation, which, according to the District Court, was the sole opportunity for the Committee to present its constitutional claims. And so that brings me to the second point, which was Kinder Morgan's suit was not a plain, speedy, and efficient remedy, especially not at the time, because it was speculative, given that the Committee didn't have notice of it, and it would have required ineffectual activity, because the Committee might have been forced to sue Kinder Morgan in order to vindicate the Committee's own constitutional rights. Third, the Court failed to apply the facial attack standard under Rule 12b-1, and examined the sufficiency of the complaint, construing its allegations as true in only the complaint. So there was no remedy available to the Committee itself, there wasn't a plain, speedy, and efficient remedy through Kinder Morgan, and the District Court failed to apply the facial attack standard. Counsel, can I ask about the efficiency of the remedy you're proposing? First of all, I'm not sure why this hasn't already been answered by the Colorado Supreme Court, but you're saying that Kinder Morgan, you know, Judge Phillips is asking you, well, why couldn't you have just gone to Kinder Morgan and said, bring suit to challenge this  Well, I mean, Kinder Morgan actually did bring suit to challenge the assessment, so that's already been done. And so how is it more efficient, then, to say every interest owner of the McElmo Dome, which could be, as far as I know, thousands, now can bring the same suit to challenge the same assessment that's based upon the same values? Well, the difference is, and getting into Kinder Morgan's litigation, what the Colorado Supreme Court dealt with was, one, whether the retroactive assessment was allowed at all, and it was, and that applies both to the Committee and to Kinder Morgan, provided that the Committee didn't get notice and the opportunity to be heard concerning that special assessment. But the second issue that the Supreme Court dealt with in that case was whether Kinder Morgan was a related party to the Cortez pipeline, and therefore allowed to take certain deductions for its tax purposes. And that's not true of the Committee. There's a relevant difference between Kinder Morgan and the Committee when it comes to their relationship to the Kinder Morgan, or to the Cortez pipeline. The Committee's members should be allowed to take that transportation deduction because they aren't related to the Cortez pipeline. But we don't know that, do we? Didn't the, going through the state administrative channels, one of the administrators said, you never showed us that you're not a related party. And that's the end of the line on that. What's alleged in the complaint is that they were unable to tell. But that should not be confused with those administrative bodies providing the Committee with the opportunity to be heard on that issue. That's what the Committee was asking for. That's the hearing that it was denied. The ability to show that it was not a related party, and it should be able to take those transportation-related deductions. Jumping around here for a minute, going back to the District Court's first error. The District Court found that the Committee had failed to allege insufficient remedies in state court. But in the appellate record at page 11, the third page, the sixth paragraph of the complaint, the Committee had alleged unequivocally that it had no remedy available to it in state court. It had no standing to seek a remedy. No means to invoke the Court's remedial function. No right to redress a wrong. This is what standing means as an element of justiciability. And the Colorado Supreme Court said that the Committee lacked it. Yeah, but you also argue that the District Court committed error by not accepting that as true. But that's not a fact. It's a legal conclusion. So why would the District Court have had to accept your assertion as to the legal conclusion as being true? So, Your Honor, here, this comes as close to a factual assertion as a legal conclusion can get. The Colorado Supreme Court used those words. The Committee has no standing. There's at least a compelling inference that where someone has no standing, no right to seek legal redress, they have no remedy. And so perhaps it's some mixture of fact and legal allegation, but because it was memorialized in the Colorado Supreme Court's order and in those words, it was a factual allegation that the Court should have construed as true. Well, why do you have standing here? So the reason that the Committee has standing here is based on its constitutional rights. Turning back to the Colorado Supreme Court, it's important to look at what it did and what it didn't do. The Colorado Property Tax Administrator intervened in that case, and it was granted cert. And the question that the Court answered was whether a non-operating small share working interest owner had standing to challenge an assessment against the unit. When the Supreme Court examined that question, it didn't mention the Constitution. It didn't look at the Committee's constitutional rights. Its analysis was confined exclusively to statutes, to Colorado statutes. And it found that the Colorado General Assembly intentionally withheld the standing from people like the Committee to bring challenges under Colorado's oil and gas statutes. But there's no reference to the Constitution, only a passing reference to the Committee's Section 1983 claim. I think it's in paragraph 13 of that opinion. And so the reason that the Committee has standing here today is because it's owed due process. It is, as the Colorado Supreme Court acknowledged, ultimately liable for these taxes, even if Colorado only grants standing to those who are primarily liable, in this case, the unit operator. So if you prevail, then we're going to have a system wherein in Colorado, only the unit operator can challenge a tax assessment before the Colorado State Court, but the floodgates are just open for every taxpayer that has any interest in this dome unit, which again could be thousands of taxpayers, can bring federal claims. Is that right? Well, two responses to that. First, the Colorado Supreme Court itself said that this is a unique representative system. There isn't a reason to think that there's going to be a- But I'm asking you about this representative system. I mean, the Delmo Dome unit, again, my understanding is has a lot of interest owners. So it may be a unique sort of system of unit operators when it comes to these different types of rights, but within the realm of this dome unit, would every interest owner, if you prevail, be able to come to federal court to challenge a state tax assessment because they can't do it in state court? Not necessarily. And in part, that's because of the Colorado Supreme Court's decision in 2023. Now, prospectively, these small share working interest owners understand that only the unit operator can bring these claims, and they can contract for that purpose. They can protect their interests. But here we're talking about a situation where the committee found out afterwards, once it was too late, that it wouldn't have notice and the opportunity to be heard. Who owed the notice? You say due process, we didn't get notice, the committee members. Who owed them the notice? Defendants, Montezuma County. So the assessor, with a limited staff, in this Colorado scheme with the unit operator for ease, for efficiency, is now required to track down every working interest owner and advise them, here's what's going on with the tax audit? And that's an important word there, with the audit. In the normal scheme of things and how things have happened historically with the committee, there was no reason to give notice to all the committee's members because both the unit operator and the committee's members were treated the same. They took the same transportation deductions. Once there was an audit, there was an additional tax imposed, additional liability that affected the committee's members and affected them differently than the unit operator. That's a situation. So what's the answer? Yes, the assessor has to track everybody down and give them that kind of notice? Yes. Why isn't it a much more efficient system for the unit operator to do that? In general, it is. In general, it does operate more efficiently. What we're talking about is the exception, the audit, not the year-to-year proceedings when there is the normal statements that are submitted, only when there's this special occasion. I'd like to reserve the rest of my time for a while. May it please the Court. Nathan Keever from Montezuma County. Excuse me. I'd like to step back to the beginning of the tax challenge. That's when Kinder Morgan brought the tax challenge. They had been caught in an audit over-deducting. It wasn't that they couldn't get a deduction to net back for their price. It was that they had calculated it incorrectly. The auditor saw that. They reassessed it. Kinder Morgan paid the entire amount for the entire unit. It then filed for an abatement. In other words, it said, we overpaid. We overpaid for the whole unit, including CO2 committee. It went to the Board of Equalization before the county and argued that. It went before and got a de novo hearing in front of the Board of Assessment Appeals. It then appealed to the Colorado Court of Appeals and then the Supreme Court. Why did it lose in the state administrative agencies? If the committee members were not related parties, they shouldn't have paid the tax. Is that true? That is not true. Again, this is a deduction, and it's how you calculate the deduction. And the way the tax rule states or provides is that if you are dealing in a third party, in other words, the operator is paying a third party, arm's length vendor to transport the gas downstream. You can count that third party arm's length price as your deduction. But if the operator is a related party to that transportation, we're not going to allow you to use that third party price, which is just an arbitrary price that the BAA found. Actually, Kinder Morgan gets some of it back because it's a member of that related party. We're not going to let you use that methodology. You have to use a different methodology, which is what is the actual amount it costs to you to move the gas? Not only for Kinder Morgan, but for all of the non-operating working interest owners. And royalty owners. Everyone has to pay ad valorem tax in the unit. So that might be a very good argument on the merits, but how does that pertain to the issue under the exception under the Tax Injunction Act? The non-operator interest owners either had a plain, speedy, and efficient remedy, or they didn't. Kinder Morgan was related to the owner of the Cortez pipeline. The others were not. Now, you say maybe on the merits, it wouldn't have made any difference. They wouldn't have gotten any different treatment than Kinder Morgan under the county's tax law. But that seems an argument on the merits. I still don't understand where these other interest owners had a plain, speedy, and efficient remedy when their situation was 100% different than Kinder Morgan's. They were not related to the Cortez pipeline. It's two different issues. The question Judge Phillips asked me was, why did they win on the merits, or why did Kinder Morgan lose on the merits at the BAA hearing? I understand that.  The question, though, would be the same for everybody in the unit, which is whether the operator was related or not. So the question doesn't come down to whether or not each royalty owner is related to the transportation company or each working interest owner. But you're saying, I don't understand your answer. That is an argument on the merits. So if I'm wrong, explain to me, how does the argument that these other interest owners would have the same tax treatment as Kinder Morgan, because of Kinder Morgan's relationship to the owner of the Cortez pipeline, how would that bear on whether those other entities have a plain, speedy, and efficient remedy when they didn't have notice, when they argue according to the complaint that they were not related parties to the Cortez pipeline? So where is their plain, speedy, and efficient remedy when they didn't get notice, Kinder Morgan didn't provide them notice according to the complaint? Where is their remedy that they have? Their remedy is set up in the Colorado statutes, which provides that the operator is going to handle the tax basis for this. So Colorado can say, okay, you don't have a remedy, fellas, only Kinder Morgan has a remedy. And so this statute under the Tax Injunction Act, state law trumps federal law. You can't, I mean, that's the opposite of what we do. The question then when you get to the federal court under the Tax Injunction Act is whether or not there is this minimal procedural criteria that's set up by the state to look. And whether or not, and it has found, Ten Circuit's found that these representative type situations, because of the efficiency, because it's a plain and simple way to handle taxing situations in very complex tax scenarios, is appropriate and does meet the due process. And we're not at due process. We're not at the merits. We're not at whether it's appropriate. We're at the Tax Injunction Act. They either have a plain, speedy, and efficient remedy for, let's say you're right, for this meritless argument that is going to get rejected on the merits on their due process claim. But I still don't understand if it's a frivolous argument on the merits, whether there was due process provided, I still don't get where their remedy was. The remedy derives from that representative function that the Colorado legislature has set up in these taxing situations. That's the remedy. Now, would they have a potential remedy that Kinder Morgan didn't do what it was supposed to, either under fiduciary duty or under the joint operating agreement, so a contract right, under the joint operating agreement is the agreement that working interest owners function under, and in which they identify who is going to be the operator in the scenario. They certainly, they could go back and say, look, you didn't, you could have made this argument. You could have made this argument. Have you argued in your briefing that their ability to, after the fact, go after a Kinder Morgan in a state tort claim was the existence of a plain, speeding and efficient remedy that would have justified them not being able to contest their tax assessment based on the relationship between Kinder Morgan and the Cortez pipeline? No, I think it would be an additional grounds for it, but I don't think that's our main argument. I would agree with that. The main argument is that Colorado has set up a representative system that meets that minimum procedural criteria that is required under Rosewell. I see. And because of that, their options then were to, if they felt that wasn't sufficient, they filed their own action, they were found to not have standing, and took that to the Colorado Supreme Court as well. Why is that relevant? They didn't have standing because of state tax law. Correct. That's not Article III standing. That's just, that, the appellant's point, because they didn't have standing under the state tax law, they didn't have a plain, speeding and efficient remedy. They couldn't have prosecuted the claim based on the inhibitions under state law that they didn't have standing under state law. And they argued that, and in their Supreme, in the CO2 Committee's Supreme Court ruling, the court said they did have due process through that representative, and they could have appealed that to the U.S. Supreme Court. That would have been an appropriate, you know, procedure to move next under, you know, Rooker-Feldman, not to file this collateral action that Kinder Morgan then, for whatever reason, said, why don't you file a collateral action and see whether or not we can fight it in a different way? And so that's what they did. They come into federal court then and say, oh, we want a hearing just for us now. Well, no, not only, if they had done that originally, they would have been barred by the Tax Injunction Act. Because the Tax Injunction Act, the court would have looked at it and said, no, state court's where you need to be. And it isn't, as my opponent set up, as if this is an exhaustion of remedies. You go to state court, and then after you're done, you go to federal court. No, you appeal from the state Supreme Court to the U.S. Supreme Court if you have that constitutional claim. The original jurisdiction is over in state court. It doesn't mean you then, even if you, and so you have to go to state court, even though, let's say Oklahoma, the Oklahoma Tax Commission assesses taxes against Bob Bacharach, against me. I don't have any notice, but Judge Federico is my lawyer, and he has notice. I don't, and you're saying that because I didn't go to the Oklahoma Tax Commission and contest my tax assessment, even though I didn't know about it, I had a plain-speaking and efficient remedy. Because if I had known about it, I could have prosecuted a claim for relief. Is that the argument? Well, the situation's a little different here, because did you have a representative that was actually designed through that Oklahoma legislature to say they're going to represent your interest in tax? You're saying, okay, because Kinder Morgan is their representative, that even though their situation is different, they had an obligation to assert arguments on behalf of the working interest owners, even though those arguments wouldn't have pertained to Kinder Morgan. Because Kinder Morgan was a related party to the Cortez pipeline. Correct. The working interest owners' whole argument is, well, they were not. Correct. So that's the argument. And they could bring that argument. Kinder Morgan could have brought that argument. You know, that's our Marestio D'Cotta claim preclusion argument, is that Kinder Morgan, it's not just what they did bring, it's what they could have brought. They could have said, hey, there are other necessary and indispensable parties that should be in this case. Why would they have been necessary and indispensable parties? Well, I'm just— Well, I mean, I know, but we take your word seriously. So you're saying that they could have asserted that they were a necessary and indispensable party to Kinder Morgan's argument. Why? They had nothing to do with Kinder Morgan's argument. Kinder Morgan was a losing party because it was clearly related, according to the findings, to the Cortez pipeline. That was not true of the others. And they weren't taking the position that anybody else should be there, but they could have, is my point. Yeah. So they're barred now to say, hey, this plaintiff is barred from saying, hey, Kinder Morgan is only barred from what it did argue. No. It also asked for an abatement of the entire amount. It wasn't standing before the BAA saying, just give us our 44% back, because we're only 44% related. It was saying, give us 100% back of that $2 million that you caught us not over-deducting for. Did you make that argument before today? That they over-deducted $2 million. I've been making that argument for— That's not what I asked you. Because they paid the assessment for the entirety of the unit that that constituted a plain, speedy, and efficient remedy under the tax injunction. I thought that's what you're arguing now. Well, that is the argument, that they were the representative party. And they did show up there as the representative party. That is why we're not even here in a hypothetical where we're questioning whether the tax injunction act applies to this party that's before the district court. We actually had the representative party go and go through the whole thing. And then we had the claiming party also go all the way through the Colorado court system. So we're better then. We have claim preclusion as well. We have issue preclusion as well. In their case, the court said they got due process. And the court didn't just say that in passing. The court specifically says that the non-fractional interest owners lack standing to challenge these assessments that they assert they deprived them of due process. We disagree for two reasons. And then the court went into why they were not deprived for two reasons. It's hard to imagine the scenario of if the law was different and didn't allow this representative, it would create this situation where these parties couldn't file in state court, but they somehow all thousands could come into federal court and try to chip away at the rulings that have already been made. We'd ask that you affirm the court's decision. Before you step down, just one question. My understanding is Kinder Morgan in the Colorado Supreme Court did try to argue that the individual interest owners in the McElmo Dome unit were not related parties. They tried to argue that they weren't related parties. They argued that other working interests weren't related parties. And Exxon Mobil was another party in that case. And they tried to say that there were these other people out here, and we should take that into consideration. And Colorado Supreme Court didn't rule on that. What's the effect of that? It was before the court. The court didn't rule on it. I think the court recognized that this was a representative system. And are you talking about in the original case? Well, what I'm reading from is the order granting motion to dismiss in Montezuma County, June 11, 2019. And the court says, it must be noted, Kinder Morgan argued repeatedly in the opening brief it filed with Colorado Supreme Court and Kinder Morgan CO2 LP that the individual interest owners in the McElmo Dome unit were not related parties with the Cortez Pipeline Company. So Kinder Morgan tried. I would agree that they're at different levels. They tried different arguments. And that was an argument that they make. I think it's still, you know, it sort of goes to our claim preclusion argument of they certainly could have argued that. It sounds like they did argue it, at least in that scenario. Thank you. Briefly, it's important to note that the committee is not making an exhaustion of remedies argument. That is not what the Tax Injunction Act requires. Nevertheless, when you look through the case law, what courts do in each instance is they look to see if there's any case law saying there's no remedy available to you or the statutes don't provide such a remedy. And so when the committee argues that it worked its way through the Colorado Supreme Court, that's only to show that seeking a remedy is futile in Colorado's Supreme Court or in Colorado's courts generally. Now, again, prospectively, since the Colorado Supreme Court's decision in 2023, small share working interest owners know that the unit operator is responsible for protecting them. And they can make contracts to secure that kind of protection for that kind of remedy through a unit operator within a representative system. However, they did not know at the time, the Colorado Supreme Court had not decided at the time, at the time of Kinder Morgan's litigation, that that was the case. And only the unit operator would be able to protect those interests. For that reason, the preclusion argument just doesn't work because there wasn't a full and fair opportunity to litigate without the incentive or without the knowledge of preclusive effects. And so the committee would ask that this court reverse the district court's order, find that the court had subject matter jurisdiction, and remand. Thank you. Thank you. Great. Do you have any questions? Thank you. Very well presented by both sides. We appreciate your excellent advocacy. To both counsel, this is submitted.